POUNDS *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

A railway company is not liable in damages for a wrongful killing by a police officer of a municipality, even if such officer was paid by the corporation, where it does not appear that at the time of the homicide the officer was performing any service for, or by direction of, the corporation, but was merely in the discharge of such duties as are performed by the police officers of the municipality.

SEPTEMBER 19, 1914.

Action for damages. Before Judge Charlton. Chatham superior court. June 11, 1913.

Beulah E. Pounds brought suit against the Central of Georgia Railway Company, for damages resulting from the homicide of her husband, Ernest T. Pounds, who, while a passenger, was killed by Charles H. Fennell in the defendant's station at Savannah. She alleged the following: On August 27, 1911, it was the duty of Fennell to act as watchman and policeman at the defendant's passenger-station, and to preserve order, quell disturbances, and eject disorderly passengers; and to aid him in the performance of this duty the defendant had provided him with a pistol and a club. Pounds, having a ticket from Savannah to Wrightsville over the line of the defendant, went to the station in Savannah to return to his home at Wrightsville. He was received by the defendant as a passenger into the station and into one of its passenger-cars bound for Tennille and points beyond. While in the car Fennell began an altercation with him. Because of this he left the car and walked up past the locomotive attached to the train containing the car he had just vacated. He then turned back to re-enter the car; but Fennell, who had been following him, suddenly and without warning, "negligently and carelessly opened fire on him with a pistol," firing several shots at him, one of which struck him just above the left eye, and another in the abdomen; and his death was immediately caused by these shots. "The shooting was careless and negligent, in that Fennell deliberately shot deceased, without lawful cause, and with-

out due caution and circumspection." The deceased was a passenger and entitled to extraordinary care and diligence for his protection; and the defendant was negligent in failing to protect him from Fennell, its own employee, and in that its watchman and policeman carelessly and negligently shot and killed the deceased, who in the exercise of ordinary care could not have avoided the injury. He was at the time trying to avoid an altercation with Fennell, who was endeavoring either to assault or evict him without any necessity therefor; and plaintiff can not say which was Fennell's purpose. Fennell was appointed a policeman under and by virtue of sections 472 and 473 of the City Code of Savannah. The defendant's connection with his employment was that it designated him for appointment, and at its request he was so appointed. The headquarters of the police for defendant were at the Ocean Steamship Company's wharves, where there was a sergeant appointed as provided in these sections of the city code. Fennell's duties were chiefly in and about these wharves. On the day of the homicide the defendant had brought a large excursion into Savannah; and Fennell was ordered by the sergeant in charge to go to the station and there preserve order and assist its officers, agents, and employees in preserving order and preventing disorder among the passengers coming and going. Both Fennell and the sergeant were paid their salaries by the defendant. The court sustained a general demurrer to the petition, and the plaintiff excepted.

*Osborne & Lawrence,* for plaintiff.

*H. W. Johnson,* for defendant.

HILL, J. (After stating the foregoing facts.) This case turns on the question, whether the policeman who shot and killed the husband of plaintiff was an officer of the City of Savannah, and was acting as such in the discharge of his functions as policeman; or whether he was the servant of the railway company, and acting as such as to a private duty imposed on him by the order or rules of the company. If the policeman was acting as an officer of the city at the time of the homicide, the city would not be liable; for the reason that the policeman was in the discharge of a governmental function, and in such case a recovery can not be had against the city. *Cook* v. *Macon,* 54 *Ga.* 468. No decision of this court deals with the identical question here presented for decision; but in *Bright* v. *Central Railway Co.,* 12 *Ga. App.* 364 (77 S. E. 372), it

was held that "A railway corporation is not responsible in damages for an unlawful arrest of a passenger, made by a police officer appointed by and subject to the direction of the municipal authorities, notwithstanding the officer was specially detailed to preserve order at the company's depot and his salary was paid by it." This ruling is directly in point. While the original petition contained some general allegations to the effect that Fennell was in the employment of the railway company, it was later amended so as to show more accurately his status. This amendment alleged, in substance, as follows: Fennell was appointed a policeman under and by virtue of sections 472 and 473 of the City Code of Savannah. The defendant company's connection with the employment was that it designated or nominated him for appointment, and at its request he was appointed as provided under the above-named sections. of the City Code of Savannah. The headquarters of police for defendant are at the Ocean Steamship wharf, where there is a sergeant appointed as provided in the above sections. Fennell's duty was chiefly about the Ocean Steamship wharves. On the date of the occurrence involved in the suit, the defendant had brought a large excursion into Savannah, and Fennell was ordered by the sergeant in charge to go to the defendant's depot and there preserve order and assist its officers, agents, and employees in preserving order and preventing disorder among the passengers coming in and going out on trains. Both Fennell and the sergeant were paid their salaries by the defendant.

Counsel argued the case as if the two sections of the municipal ordinances referred to by number had been set out in full in the petition. It is well settled that the courts can not take judicial cognizance of municipal ordinances. If it is sought to plead them as establishing the rights of the plaintiff, they should be set out in the petition, not merely referred to by number. Notwithstanding, under the established rule that the pleadings must be taken most strongly against the pleader, enough appears in this petition as amended to show that the sergeant and Fennell were both appointed as a part of the police force of Savannah under ordinances touching that subject. And from the amendment it appears that Fennell was ordered by the sergeant to go to the railroad depot for the purpose of assisting in keeping order and preventing disorder at a time when a large number of people would likely be there on

account of an excursion. There is nothing in the allegations which shows that he was performing any private duty for the defendant. The question arises, was Fennell, the policeman, the agent of the city exclusively; or was he the agent of the company, with super-added police powers; or was he acting in a dual capacity? If a man is a policeman, and he has no duties to discharge except police duties proper for the public,—if he is acting as a public policeman and nothing else,—the mere fact that the company pays for his services does not make him the agent of the railway company. The company may become liable for his torts by directing them, even though he be a public officer. Or, he may have the functions of a public official; and also certain things that he does for the company for its benefit, for the benefit of its property, or its trains,—for instance, to light up the station; or the company may have him to help the baggage-master. He may occupy a dual position of exercising functions for the public and the company; in which case, where he is in the discharge of duties for the company, and the tort is committed under such circumstances as not to justify it, the company is liable. But if he commits a tort merely as a police officer, the company would not be liable, unless it was done at the direction of the company. The mere fact that a railroad company pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable. It does not appear from the petition that the defendant company had control over the policeman in any way. On the contrary, it is alleged that he was ordered to the depot by the sergeant, another policeman of the city. The company had no power, so far as appears, to employ, direct, or control the policeman. It does not appear that the policeman performed any services as a servant for the company, or had any duty to perform in guarding the company's property. It is not alleged that this officer did anything but what a regular policeman does. He had no more duty to perform to the railroad company than he had to any citizen. It does not appear that in that which he did he was expressly or impliedly directed by the company, nor that he was attending to any business for the company at the time of the unfortunate homicide. It does not appear that the company sent him on the train and that he was attending to the company's business when the altercation between him and the deceased commenced, or subsequently when it terminated in the

death of plaintiff's husband. Fennell was simply a policeman of the City of Savannah, going in the station and train where he had a right in the discharge of his duties to go, and became engaged in an altercation in no way connected with the company's business, so far as the record discloses.

In McKain v. Baltimore &c. R. Co., 65 W. Va. 233 (64 S. E. 18, 23 L. R. A. (N. S.) 289, 131 Am. St. R. 964, 17 Ann. Cas. 634), it was held that "A special officer appointed and commissioned by the Governor at the instance of a railroad company, under the provisions of § 31, chap. 145, Code 1899 (Code 1906, § 4281), and paid by such company for his services, is prima facie a public officer, for whose wrongful acts such company is not liable." In delivering the well-considered opinion Poffenbarger, J., after citing quite a number of authorities, one of which held under the facts that a street-railway company was liable, said: "If, however, it does not appear that the act done was within the scope of the servant's employment, or that there was any employment or contract of service beyond that by which the person or corporation at whose instance the appointment of the officer was made bound himself to pay the officer for his services as a policeman, or that the arrest was made or the person prosecuted at the instance or by the direction of the person who had the appointment made, there is no liability upon such person for the act." In the note to this case in 23 L. R. A. (N. S.), it is said that the doctrine of the decision represents the great weight of authority on the question of the liability of an employer for the acts of a special policeman.

It does not appear from the allegations in the present case that the policeman was employed, paid, and subject to be discharged by the company, so as to be its employee, within the ruling in *Tabb* v. *Mallette,* 120 *Ga.* 97 (47 S. E. 587, 102 Am. St. R. 78).

In view of what has been said and the authorities cited, we hold that the petition was properly dismissed on demurrer.

*Judgment affirmed. Evans, P. J., and Beck, J., dissent. Atkinson, J., disqualified. The other Justices concur.*