# MASSACHUSETTS COTTON MILLS *et al. v.* HAWKINS.

1. Every person is liable for torts committed by his servant, by his command, or in the prosecution of his business, whether the same be by negligence or voluntary.

(a) If a public officer is employed and paid by the master to perform certain acts for him, and if in the prosecution and scope of the master's business such officer commits a tort, the master is liable therefor.

(b) So where a manufacturing company employs and pays a public officer to keep order on its premises, protect its property, and make arrests of persons violating the State laws, if such servant in the prosecution of his duties as such servant and within the scope of the master's business commits a tortious act, the master is liable for the servant's tort.

(c) It has been generally held to be a question of fact for a jury, whether, when a special officer performs acts for which the master is sought to be held liable, he is acting in his capacity as a servant, or as a public officer.

(d) Where a public officer was employed by a manufacturing corporation to keep order on its premises, protect its property, and make arrests of persons for violation of the State laws, the provision for the arrest of persons violating the State laws, fairly construed, must be held to refer to persons violating such laws upon the premises of the employer, or where infractions of such laws were so near the premises of the master that they affected or involved its property or interests, or both, or grew out of some transaction between the company and the person sought to be arrested.

(e) The company would not be liable for a homicide committed by the officer in an attempt to execute a warrant against a person charged with the commission of a misdemeanor, which was not committed upon its premises, or so near thereto as in no way to involve or affect its property rights or interests, and which did not grow out of any transaction

---

False Imprisonment, 25 C. J. p. 505, n. 19, 28; p. 506, n. 41; p. 549, n. 45.

Master and Servant, 39 C. J. p. 1265, n. 10; p. 1273, n. 94, 96; p. 1274, n. 1; p. 1279, n. 47; p. 1282, n. 69.

Torts, 38 Cyc. p. 483, n. 91; p. 485, n. 98; p. 488, n. 14.

between the company and the person sought to be arrested, although such warrant was procured by its manager; the authority of the manager to sue out said warrant in such circumstances not being expressly conferred by the corporation, and not falling within the implied powers of such agent.

2. The fact that the warrant procured by the corporate agent was void, and was known by him to be void, would not render the corporation liable for the homicide of the defendant therein, committed by the officer in attempting to effect his arrest.

(a) The warrant being void and known to be void by the party suing it out, the latter did not act in good faith in suing it out, and would be liable to the defendant in the warrant for any injury sustained by him by reason of his arrest and imprisonment thereunder; but where the party suing out the warrant did not act in concert with the officer in slaying the defendant, or did not aid or assist the officer in causing the death of the defendant, or did not counsel or command the officer to kill him, he would not be liable for the homicide of the deceased, the homicide not being ordinarily and naturally produced by the act of the party in suing out the warrant and turning it over to the officer for execution.

3. The first question propounded by the Court of Appeals is answered in the affirmative, and the second is answered in the negative.

No. 5780. JULY 30, 1927.

Questions certified by Court of Appeals (Case No. 17613).

*Willingham, Wright & Covington,* for plaintiffs in error.

*Porter & Mebane,* contra.

HINES, J. The Court of Appeals requested of this court answers to the following questions:

1. Is the tortious act of an arresting officer, committed in the execution of a criminal warrant, procured by the agent in charge of the corporation by which the officer is employed and paid, for an offense not committed against the company, or on its premises, but on the highway adjacent thereto, necessarily to be taken as in the exercise of a governmental function, so as to exclude responsibility for such a tort on the part of both the company and its agent in charge, *or either,* where it appears that the duties imposed upon such public officer by such private employment were to keep order on the company's premises, protect its property, and make arrests of persons violating the State laws? See *Pounds* v. *Central of Ga. Railway Co.,* 142 *Ga.* 415 (83 S. E. 96); *Exposition Cotton Mills* v. *Sanders,* 143 *Ga.* 593 (85 S. E. 747).

2. If the foregoing question be answered in the affirmative, would the fact that the warrant procured by such corporate agent was known by him to be void operate to change the rule, so as to

render either such agent or such corporation, or both, liable for such tortious act of such arresting officer?

1. Every person is liable for torts committed by his servant, by his command, or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary. Civil Code (1910), § 4413. It matters not that the employee is a public officer, and is employed because he is such officer. If the officer is employed by the master to perform certain acts for the master, and if in the prosecution and within the scope of the master's business such officer commits a tort, the master is liable. So where a manufacturing company employs a public officer to keep order on its premises, protect its property, and make arrests of persons violating the State laws, if such servant, in the performance of his duties as such servant, commits a tortious act, the master is liable for the servant's tort. *Exposition Cotton Mills* v. *Sanders,* supra; Kusnir *v.* Pressed Steel Car Co., 201 Fed. 146; Union Ry. Co. *v.* Carter, 129 Tenn. 459 (166 S. W. 592); St. Louis &c. Ry. Co. *v.* Hackett, 58 Ark. 381 (24 S. W. 881, 41 Am. St. R. 105); Texas &c. R. Co. *v.* Parsons, 102 Tex. 157 (113 S. W. 914, 132 Am. St. R. 857); Dickson *v.* Waldron, 135 Ind. 507 (41 Am. St. R. 440, 24 L. R. A. 483, 34 N. E. 506, 35 N. E. 1); Terry *v.* Burford, 131 Tenn. 451 (175 S. W. 538, L. R. A. 1915F, 714); Mott *v.* Consumers' Ice Co., 73 N. Y. 543; Deck *v.* B. & O. R. Co., 100 Md. 168 (59 Atl. 650, 108 Am. St. R. 399); McKain *v.* B. & O. R. Co., 65 W. Va. 233 (64 S. E. 18, 131 Am. St. R. 964, 23 L. R. A. (N. S.) 289); Rand *v.* Butte Electric Ry. Co., 40 Mont. 398 (107 P. 87); Brill *v.* Eddy, 115 Mo. 597 (22 S. W. 488); Hirst *v.* Fitchburg &c. Ry. Co., 196 Mass. 353 (82 N. E. 10).

It has been generally held to be a question of fact for determination by a jury, whether, when a special officer performed the acts for which the master is sought to be held liable, he was acting in his capacity as servant, or in his capacity as a public officer. Sharp *v.* Erie R. Co., 184 N. Y. 100 (76 N. E. 923, 6 Ann. Cas. 250); Deck *v.* B. & O. R. Co., Texas & N. O. R. Co. *v.* Parsons, supra. But if the wrong was done by the officer as such, his employer is not liable, even if the officer exceeded his just authority; but if it was done during the course of his duty as employee, and within the scope of his employment, then the employer is liable, even if it be done in excess of authority; and it is generally a question for

the jury to determine, under all the evidence, the capacity in which the wrong-doer was acting at the particular time.

The first question propounded by the Court of Appeals is this: Whether, under the facts stated therein, a finding is demanded that the tortious act was committed by the tort-feasor in his capacity of an officer, so as to relieve the company and its manager, or either, from responsibility therefor. In determining this question we must first determine the scope of the employment of this officer by the company. Under this question, he was employed to keep order on the company's premises, protect its property, and make arrests of persons violating the State laws. Fairly construed, the employment of this officer to arrest persons for violation of the State laws must be held to refer to persons violating such laws upon the premises of the employer, or so near thereto as to affect the master's property or interests, or where infractions of such laws affect or involve its property or interests or both, or grow out of some transaction between the company and the person sought to be arrested. It would hardly be reasonable to hold that this company was employing an officer to make arrests for indiscriminate infractions of the criminal laws, anywhere and everywhere in the State, and when such infractions of the laws did not take place upon the premises of the employer, and in no way involved or affected its property, the use and enjoyment of its premises, or its interests. The obvious purpose of the employment was to secure good order upon the premises of the employer, and to protect the company's property and rights. So construing the contract of employment, the arrest sought to be made did not fall within the prosecution and within the scope of the master's business. The arrest was not made to keep order on the company's premises, to protect its property or its rights, and was not made on its premises, but was made on the highway adjacent thereto. The officer seeking to make the arrest was not acting under authority conferred upon him by virtue of his employment, but was acting by virtue of the authority conferred upon him by the warrant which he was seeking to execute. He could not execute this warrant as the employee, but could only do so as an officer. *Coleman* v. *State*, 121 *Ga.* 594 (3) (49 S. E. 716). He was proceeding under authority conferred by this warrant, and under the ægis of the law. He was undertaking to discharge the duty which rested

upon him as such officer. *Pounds* v. *Central of Ga. Ry. Co.,* supra. The company would not be liable for a tortious act of the officer committed in an attempt to arrest under a warrant a person charged with the commission of a misdemeanor which was not committed upon its premises, which in no way involved or affected its property rights or interests, and which did not grow out of any transactions between the company and the person sought to be arrested. McKain v. B. & O. R. Co., supra. In these circumstances it must necessarily be taken that the officer acted in his official capacity and not in his capacity as an employee, and that neither the company which employed him, nor its manager, is liable for any tortious act committed by him in undertaking to make an arrest under the warrant.

2. Would the fact that the warrant procured by the corporate agent was void, and was known by him to be void, operate to change the principle, so as to render either such agent or such corporation, or both, liable for the tortious act of the arresting officer? Clearly the corporation would not be liable for the tortious act of the officer. As we have held above, the officer who undertook to execute this warrant did not do so as the employee of the corporation, and in the prosecution and within the scope of the business of the corporation, and for that reason the corporation was not liable. The fact that the agent of the corporation procured the warrant which the officer was undertaking to execute, and which the agent knew to be void, would not make the corporation liable, the warrant not being procured by the agent in the prosecution and within the scope of its business. Whether the agent himself would be liable presents another question. It appears from the record in the case that the arresting officer killed the person against whom the warrant issued. The charge in the warrant was a misdemeanor, and the officer was not authorized to kill the defendant merely because he was fleeing to escape an arrest for a misdemeanor. This being so, the homicide was wilful and felonious. The suit was brought by the widow of the deceased against the arresting officer, the corporation, and its general manager, for the homicide of the deceased. It is not pretended that Meikleham, the manager of the corporation, who procured the warrant for the arrest of the deceased, and turned it over to the officer for execution, acted in concert with the officer

in taking the life of the deceased, or that he advised, aided, or abetted the officer in any way in committing the homicide. The only part which he took in the transaction was to procure the warrant and turn it over to the officer for execution. This act of Meikleham did not ordinarily and naturally produce the death of the deceased. Such act would naturally and ordinarily bring about the arrest of the party against whom the warrant issued, and both Meikleham and the arresting officer would generally be liable to the party arrested for the wrongful act of arresting him under a void warrant; but Meikleham would not be liable for the homicide of the person against whom the warrant issued, committed by the arresting officer, merely because he procured the warrant and turned it over to the officer for the purpose of having the deceased arrested. If the warrant had been valid and an arrest had been made thereunder, Meikleham could not be held responsible for the conduct of the officer or person in charge of the prisoner after the arrest, unless it had been shown to have been done by his authority or to have been caused by him. *Ocean Steamship Co.* v. *Williams,* 69 *Ga.* 251; *Singer Sewing Machine Co.* v. *Rachell,* 8 *Ga. App.* 553 (69 S. E. 1134). In a case where the warrant is void, an arrest thereunder would not give rise to an action for false arrest or imprisonment thereunder, if the party who swore out the warrant acted in good faith, and the officer executing it acted in like manner. *Page* v. *Citizens Banking Co.,* 111 *Ga.* 73 (36 S. E. 418, 51 L. R. A. 463, 78 Am. St. R. 144) ; *Butler* v. *Tattnall Bank,* 140 *Ga.* 579 (79 S. E. 456). But when the party suing out a warrant knows that it is void, he would not be acting in good faith in suing it out and having the person named therein arrested, and would be liable to the defendant for false imprisonment. *Berger* v. *Saul,* 113 *Ga.* 869 (39 S. E. 326). But would the party suing out the warrant be liable for the homicide of such person, committed by the officer in attempting to effect the arrest? "Where an immediate act is done by the cooperation or the joint act of two or more persons, they are all trespassers, and may be sued jointly or severally, and any one of them is liable for the injury done by all. To render one man liable, in trespass, for the acts of others, it must appear either that they acted in concert, or that the act of the party sought to be charged ordinarily and naturally produced the acts of the

others." *Brooks* v. *Ashburn,* 9 *Ga.* 297; *Burns* v. *Horkan,* 126 *Ga.* 161 (54 S. E. 946). If the person against whom the void warrant issued had been arrested, then both the person who procured the warrant and turned it over to the officer for execution, and the latter, would have been jointly liable for the wrong so done if not done in good faith; but as the execution of a void warrant does not ordinarily and naturally result in the death of the person against .whom it issued, at the hands of the officer, the person who procured the void warrant and turned it over to the officer for execution would not be liable for the homicide of the person sought to be arrested, brought about by the arresting officer, where the party procuring the warrant did not act in concert with the officer encompassing the death of the defendant in the warrant, or did not aid or assist the officer in causing the homicide of the party against whom the warrant issued, or where he did not counsel or command the officer to kill him. So we are of the opinion that the fact that the warrant was procured by the agent, although he knew the warrant to be void, would not, under the facts stated, render the agent, or the corporation, or both, liable for the tortious act of the arresting officer in bringing about the death of the party against whom the warrant issued.

The first question propounded by the Court of Appeals is answered in the affirmative, and the second question is answered in the negative.                    *All the Justices concur.*