In the Supreme Court of Georgia

Decided: October 6, 2014

S13G1843.  AMBLING MANAGEMENT CO., LLC et al. v. MILLER
S13G1852.  CITY VIEWS AT ROSA BURNEY PARK GP, LLC et al. v.
MILLER

BENHAM, Justice.

This case is before us on the grant of appellants' petitions for writs of certiorari.  On May 5, 2009, appellee Tramaine Miller was seriously injured when Reginald Fisher, an off-duty POST-certified City of Atlanta ("APD") police officer who had been patrolling the apartment complex in which Miller's quadriplegic aunt lived, shot Miller.  Miller brought a series of tort claims against the apartment complex, its management company, and three individuals.[1] Miller's causes of action included claims for assault; battery; intentional infliction of emotional distress; false imprisonment; invasion of privacy; wrongful retention, supervision, hiring, entrustment, and training; premises liability; failure to warn; and punitive damages.  Appellants moved for summary

---

[1]Miller sued the following defendants: City Views Apartments at Rosa Burney Park GP, LLC ("City Views"); Ambling Management Company, LLC ("AMC"); Kelly Bunch; Reginald Fisher; and Bryan French.  City Views and AMC are the only defendants in this appeal.

judgment and the trial court granted the motions as to Miller's claims for vicarious liability; negligent hiring, retention, entrustment, and supervision; premises liability; and punitive damages. The trial court determined there was no vicarious liability because there was no evidence that the apartment or management company had directed Fisher's actions at the time the cause of action arose. Miller appealed the trial court's decision on his claims for vicarious liability, premises liability, and punitive damages. In Miller v. City Views at Rosa Burney Park GP, LLC, 323 Ga. App. 590, 592-598 (746 SE2d 710) (2013), the Court of Appeals reversed the trial court's grant of summary judgment to appellants on the vicarious liability and punitive damages claims and affirmed the trial court's grant of summary judgment on the premises liability claim. In reversing the trial court on the vicarious liability claim, the Court of Appeals found that there was some evidence that Fisher was performing duties directed by appellants and concluded that summary judgment was inappropriate. Id. at 595. The Court of Appeals reversed the judgment on the punitive damages claim because it had reversed the trial court's judgment on the vicarious liability issue. Id. at 597. As to the premises liability claim, the Court of Appeals reasoned that the trial court did not err because it found no

2

evidence in the record that "defendants directed, condoned, or encouraged reckless or unlawful behavior by the off-duty officers." Id. at 596. We granted appellants' petitions for writs of certiorari posing the following question: "Did the Court of Appeals's majority opinion err in focusing on the evidence of whether Officer Fisher was performing police duties not directed by his private employer at the time he approached and engaged Miller, instead of at the time the alleged causes of action arose?" We now affirm the Court of Appeals' ruling as being right for any reason.

1. When reviewing a trial court's grant of summary judgment, we conduct a de novo review of the facts to determine whether there is a genuine issue of material fact and to determine whether the undisputed facts, viewed in a light most favorable to the non-movant, warrant a judgment as a matter of law. Blockum v. Fieldale Farms Corp., 275 Ga. 798, 800 (573 SE2d 36) (2002). With this standard in mind, the evidence on summary judgment showed as follows. In 2008, Paul and Philip Kennon, owners of appellant City Views at Rosa Burney Park GP, LLC ("City Views"), engaged Bryan French, a POST-certified APD police officer, to patrol the apartment complex, which was in an area known for a high volume of crime, including gang activity, illicit drug

3

trading, and car theft, during his off-duty time. Appellant Ambling Management Co., LLC ("AMC") provided onsite property management services at City Views through its employee Kelly Bunch who worked and lived on the City Views property. When French first began patrolling the property, a security guard service was also onsite; but at some point City Views terminated the security guard service and requested that French coordinate more hours of patrol by off-duty APD police officers. Paul Kennon communicated to French[2] that he wanted to increase the amount of arrests being made onsite in order to deter criminal activity at the apartments and in order to evict those tenants who were engaging in or facilitating onsite crime. French patrolled the apartments and enlisted other officers like Fisher to work shifts at City Views.[3] All officers wore their APD-issued uniforms while patrolling at City Views and used their APD-issued equipment such as their service weapons and batons. Each officer was also required to have an approved permit from APD to perform off-duty "extra work," such as patrolling apartment complexes. At the time leading up

---

[2]These communications were primarily in the form of emails.

[3]Appellee conceded below that only appellant City Views hired Fisher to patrol the premises and that AMC and Kelly Bunch were not liable for the negligent hiring or retention of Fisher.

to the shooting, City Views would pay French a lump sum amount for the off-duty patrols and French would pay the other officers their share in cash.[4]

On May 5, 2009, Fisher was scheduled to work at City Views from 6 p.m. to 10 p.m.[5] He arrived a few minutes early and contacted French by phone to alert him that he was working. He was dressed in his APD uniform, but arrived at City Views in his personal vehicle. At approximately 9 p.m., while sitting in his vehicle, Fisher observed Miller pull up and park in a handicap space. Fisher testified that he believed Miller walked to the apartment building's fire doors, but Miller testified and a surveillance video apparently showed, that Miller entered through the main entrance of the building. Fisher testified that from his previous employment as a City of Atlanta fireman, he knew that drug dealers and drug users utilized the area by the fire doors for their illicit activities and so he stated his suspicions were raised about the possibility that Miller was selling or buying drugs based on his belief that Miller had walked near the building's fire doors. While Miller was inside the building, Fisher left his personal vehicle, walked over to Miller's vehicle and looked inside using his flashlight and did

---

[4]After the shooting, City Views paid each officer individually.

[5]He was then scheduled to work an APD shift from 11 p.m. to 7 a.m.

not see a handicap tag or sticker. Fisher also did not see any contraband. Fisher returned to his car. Miller stated that upon returning to his vehicle, he got in, started the engine, and put the car in reverse when he heard someone he did not see yelling at him to put his hands up. Miller says he complied with the command to put his hands up[6] and, as he did so, he held his cell phone in his left hand. Miller said that after he put his hands up, the car window broke and he heard a gunshot. The next thing he remembered was waking up in the hospital.

Fisher said he had been instructed by property manager Kelly Bunch to keep the handicap spaces and fire lanes clear of unauthorized vehicles. Officer Fisher testified he approached Miller's car to discuss with him City Views' policy of keeping the handicap spaces clear. Fisher said he tapped on the car window to get Miller's attention and at that time saw Miller pull out of his pocket something that appeared to Fisher to be a piece of crack cocaine and put it in his mouth. According to Fisher, as Miller was putting the alleged drugs in his mouth, Miller was also slowly backing up the car and the car "bumped" Fisher. Fisher said there was no gas to the vehicle when it bumped him and said

---

[6]Two other witnesses, who were at the complex that night and who testified in the criminal proceedings against Fisher, stated that Miller stopped his vehicle and complied with Officer Fisher's commands.

6

he did not believe Miller was trying to hurt him with the car. Fisher, however, made a decision to arrest Miller for having illegal drugs. Fisher stated he issued commands to Miller that went unheeded and so he broke the driver's side window and then saw Miller make a move to reach for something under his car seat. Believing Miller had a weapon, Fisher shot Miller in the left side of the face. When a responding officer arrived on the scene, he found no drugs and no weapon on Miller's person or in his car.

2. City Views and AMC contend the Court of Appeals erred when it reversed the trial court's grant of summary judgment. They argue that the Court of Appeals opinion erroneously focuses on Fisher's conduct and intent as he approached Miller rather than focusing its analysis on Fisher's conduct and intent at the time the torts or causes of action arose. For reasons set forth below, we agree with appellants that the proper focus of analysis is to determine in what capacity the officer was acting at the time the tort arose.

This Court set forth the relevant analysis regarding a private employer's vicarious liability for actions of a "special" policeman in a trifecta of cases issued in the early twentieth century. See Massachusetts Cotton Mills v. Hawkins, 164 Ga. 594 (139 SE 52) (1927); Exposition Cotton Mills v. Sanders,

7

143 Ga. 593 (85 SE 747) (1915); <u>Pounds v. Central of Georgia RY. Co.</u>, 142

Ga. 415 (83 SE 96) (1914). In <u>Pounds</u> we explained:

> The question arises, was ...the policeman, the agent of the city exclusively; or was he the agent of the company, with superadded police powers; or was he acting in a dual capacity? If a man is a policeman, and he has no duties to discharge, except police duties, proper for the public,–if he is acting as a public policeman and nothing else,–the mere fact that the company pays for his services does not make him the agent of the railway company. The company may become liable for his torts by directing them, even though he be a public officer. Or, he may have the functions of a public official, and also certain things that he does for the company for its benefit, for the benefit of its property, or its trains, –for instance, to light up the station; or the company may have him to help the baggage-master. He may occupy a dual position of exercising functions for the public and the company; in which case, where he is in the discharge of duties for the company, and the tort is committed under such circumstances as not to justify it, the company is liable. But if he commits a tort merely as a police officer, the company would not be liable, unless it was done at the direction of the company. The mere fact that a railroad company pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable.

142 Ga. at 418. In <u>Pounds</u>, a City of Savannah policeman was assigned by a

sergeant to patrol the railway station. Both the sergeant and the policemen were

paid by the railway company. During his patrol, the policeman initiated a

confrontation with a railway passenger and then fatally shot the passenger.

8

Upholding the railway company's general demurrer to plaintiff's petition, this Court determined that the railway company was not liable for the passenger's death because the officer was only acting in his capacity as a City of Savannah policeman when the altercation and shooting occurred.[7]

In Sanders, supra, a manufacturing company employed a watchman to patrol the plant and the employee housing tenements, specifically authorizing the watchman to arrest persons violating the law, injuring company property, or creating disorder. 143 Ga. at 594. The watchman approached plaintiff while he was sitting intoxicated on the steps of one of the company tenements and proceeded to beat the plaintiff with a club while placing him under arrest and while waiting for plaintiff to be picked up by a patrol. Id. Relying on Pounds, this Court upheld the denial of the general demurrer, reasoning that the company could be liable for the torts committed by the watchman because at the time of the incident he was acting within the scope of his general duties as the servant of the company to arrest people who violated the law or who created disorder

---

[7]Specifically, the Court stated, "It does not appear that the company sent [the officer] on the train, and that he was attending to the company's business, when the altercation between him and the deceased commenced, or subsequently when it terminated in the death of the plaintiff's husband." Id. at 418-419.

on company premises. Id. at 595. In <u>Hawkins</u>, supra, we held that whether a special officer is acting in the capacity as a servant or acting in the capacity as a public officer is generally a question for the jury based on all evidence provided. 164 Ga. at 596 (officer was acting in his capacity as a public officer when he was serving a warrant).[8]

Most of the more recent Court of Appeals decisions have made it clear that the officer's capacity (policeman, servant, or dual) *at the time the tort arose* is the key time-period on which to focus to determine the liability of the company. See <u>Touchton v. Bramble</u>, 284 Ga. App. 164, 165 (1) (a) (643 SE2d 541) (2007); <u>American Multi-Cinema, Inc. v. Walker</u>, 270 Ga. App. 314, 315 (605 SE2d 850) (2004) ("'...the employer escapes liability if the officer was performing police duties which the employer did not direct *when the cause of*

---

[8] We stated in <u>Hawkins</u>:
It has been generally held to be a question of fact for determination by a jury whether when a special officer performed the acts for which the master is sought to be held liable he was acting in his capacity as servant or in his capacity as a public officer. [Cits.] But if the wrong was done by the officer as such, his employer is not liable, even if the officer exceeded his just authority, but if it was done during the course of his duty as employee and within the scope of his employment, then the employer is liable, even if it be done in excess of authority; and it is generally a question for the jury to determine, under all the evidence, the capacity in which the wrongdoer was acting at the particular time.

Id. at 596-597.

*action arose.*'") (emphasis supplied); Page v. CFJ Properties, 259 Ga. App. 812, 813 (578 SE2d 522) (2003); Wilson v. Waffle House, Inc., 235 Ga. App. 539 (510 SE2d 105) (1998); Smith v. Holeman, 212 Ga. App. 158 (4) (441 SE2d 487) (1994); Rembert v. Arthur Schneider Sales, Inc., 208 Ga. App. 903, 904 (432 SE2d 809) (1993); Beck v. Paideia School, Inc., 191 Ga. App. 183 (381 SE2d 132) (1989) ("If *at the time the alleged tort was committed* the police officer was performing public duties, not at the direction of the private master, the master is not liable.") (emphasis supplied); Welton v. Georgia Power Company, 189 Ga. App. 17, 19 (1) (375 SE2d 108) (1988); Colonial Stores, Inc. v. Holt, 118 Ga. App. 826 (2) (166 SE2d 30) (1968). As indicated in Hawkins, however, a jury may consider all evidence presented to decide the issue of capacity. 164 Ga. at 596-597. See also Smith v. Holeman, supra, 212 Ga. App. at 161; Colonial Stores, Inc. v. Holt, supra, 118 Ga. App. at 829; Kent v. Southern Railway Co., 52 Ga. App. 731, 735 (184 SE 638) (1936) ("[W]here the capacity in which the person acts when occupying the dual position of public officer and private employee is uncertain, a jury question is presented"). This is in keeping with the recognition that a special policeman's capacity can change over the course of an encounter with a plaintiff. For example, Rembert v.

11

Arthur Schneider Sales, Inc., supra, 208 Ga. App. 903, is illustrative of an off-duty police officer's changing capacity when working on the premises of a private employer. In that case, the private store owner requested that the off-duty officer "finesse" an unruly customer to leave the store. When the customer still did not leave, the officer advised the store owner to request that the customer leave, otherwise he would have no authority to make the customer do anything. The store owner asked the customer to leave and the officer advised the customer that if she did not leave as the owner had requested, she would be subject to arrest for criminal trespass. When the customer failed to leave, a scuffle ensued and the customer was handcuffed and taken away. The Court of Appeals reasoned that at the point the store owner requested the officer to "finesse" the customer to leave, he was acting as a servant; but when the officer arrested the customer for criminal trespass once she failed to leave as requested by the owner, he was acting solely as a police officer. Id. at 905. In holding that the store owner was not vicariously liable, the Court of Appeals noted that the store owner never requested that the officer arrest the customer. Id.

In the case at bar, the Court of Appeals set forth the analysis with which we are concerned in Division 1 (b) of its opinion. Citing to Hawkins, supra,

12

the Court of Appeals noted that generally a jury must decide in what capacity the officer was acting "when [the officer] performed the acts for which the master is sought to be held liable." Miller v. City Views at Rosa Burney Park GP, LLC, 323 Ga. App. at 593. Then, citing to Siebers and Pounds, the Court of Appeals stated that an employer escapes liability if "when the cause of action arose," the officer was performing police functions not directed by the employer. Id. Referencing Pounds, it also stated that an officer could be acting in a dual capacity in which case the employer could be liable for the torts of an off-duty police officer. Id. at 594. The Court of Appeals rounded out its summation of the legal framework by stating, "[W]e must determine whether there is any evidence to support a finding that Fisher was discharging any duties directed by City Views rather than merely performing police duties...." Id. While the Court of Appeals more or less accurately summarized the applicable legal framework, its subsequent factual analysis was incomplete.

The Court of Appeals determined that AMC and City Views were not entitled to summary judgment on the basis that a jury could conclude that "when [Fisher] engaged Miller," he was acting as an officer to enforce parking regulations as to handicap spaces and he was executing an AMC/City Views

13

policy of regulating access to the apartments. Id. at 595. The opinion ignores evidence regarding Fisher's actions *at the time the causes of action arose*–namely, the points at which he stopped the vehicle (false imprisonment), broke the car's window with his baton and pulled out his weapon (assault), and shot Miller in the face (battery).[9] For example, the opinion does not mention Fisher's belief he saw Miller ingest crack cocaine, Fisher's belief that he saw Miller reach for a weapon, Miller's and other witness testimony that Miller complied with Fisher's commands, Miller's statement that he only had a cell phone in his hand, and the fact that no drugs or weapons were found. There is also no mention or discussion of the other evidence a jury would be entitled to consider such as the emails sent by City Views instructing French that it wanted the officers to increase arrests in order to deter crime and evict tenants who were linked to illegal activity. While Fisher's reasons for initially approaching Miller are relevant, the Court of Appeals' limiting its scope of review to only those facts was in error.

---

[9]No tort was committed by Fisher for merely approaching Miller's vehicle with the intent to admonish Miller about parking in the handicap space and to inquire as to why he had entered the building.

3. Despite the fact that the Court of Appeals' analysis was erroneously limited in focus and scope, its ultimate decision reversing the trial court's grant of summary judgment to City Views and AMC must be upheld. As we indicated in Hawkins, supra, whether a special officer is acting in the capacity as a servant, acting in the capacity as a public officer, or acting in a dual capacity is generally a question for the jury to decide. 164 Ga. at 596. See also Colonial Stores, Inc. v. Holt, supra, 118 Ga. App. at 829; Kent v. Southern Railway Co., supra, 52 Ga. App. at 735. Appellants contend the evidence of capacity is undisputed because Officer Fisher has stated that he intended to arrest Miller for having illegal drugs at the time he broke Miller's car window and has stated that he shot Miller because he believed he saw Miller reach for a weapon. Officer Fisher's credibility on this issue, however, is disputed by Miller's testimony and other evidence that Miller had no drugs or weapons and complied with Officer Fisher's commands. See Poole v. State, 291 Ga. 848 (1) (734 SE2d 1) (2012) ("[T]he credibility of a witness is a question for the jury, not the appellate court.") Even if the jury ultimately finds Fisher to be credible, there is some evidence that City Views directed patrol officers to make arrests in order to curb illegal activity on the property. Such evidence is for the jury to consider along

15

with the other evidence to make a determination as to the capacity in which Officer Fisher was acting at the time the causes of action arose. Accordingly, we affirm the judgment of the Court of Appeals pursuant to the right for any reason rule. See <u>Cobb v. Hart</u>, 295 Ga. 89 (2) (757 SE2d 840) (2014).

<u>Judgment affirmed. All the Justices concur.</u>