**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2018**

# In the Court of Appeals of Georgia

A18A0084. AGNES SCOTT COLLEGE, INC. v. HARTLEY.

MCFADDEN, Presiding Judge.

In the third appearance of this case before us, Agnes Scott College, Inc. challenges the trial court's denial of its motion for judgment notwithstanding a mistrial. It argues that the trial evidence did not support the imposition of vicarious liability against it for the allegedly tortious acts of campus policeman[1] Gaetano Antinozzi. But Agnes Scott does not dispute that Antinozzi was its full-time employee acting within the course and scope of his employment when he engaged in

---

[1] As detailed below, the expression "campus policeman" is statutory. OCGA § 20-8-1 (2). OCGA § 20-8-1 et seq., which we will refer to herein as the Campus Policeman Act, is one of the few parts of our Code that still uses gender-specific language.

the acts at issue. Because these facts permit the imposition of vicarious liability against Agnes Scott, we affirm.

1. *Facts and procedural history.*

A motion for judgment notwithstanding a mistrial

> can be sustained only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. On appeal from a grant of a motion for judgment notwithstanding a mistrial, we view the evidence and the inferences reasonably supported by the evidence in favor of the nonmovant.

*Luck v. Regions Bank*, 248 Ga. App. 290, 290 (546 SE2d 342) (2001) (citations omitted).

Viewed in Hartley's favor, the trial evidence showed that in April 2009, an Agnes Scott student falsely accused Hartley of physically and sexually assaulting her on campus. Antinozzi, a full-time Agnes Scott campus policeman certified by the Georgia Peace Officer Standards and Training Council (POST-certified) investigated the accusation. Based primarily on the student's account and in the face of medical evidence conflicting with that account, he obtained warrants for Hartley's arrest. Hartley was arrested at her home in Tennessee and extradited to Georgia. The state

2

ultimately dismissed the charges against Hartley without presenting them to a grand jury.

Hartley brought an action against Agnes Scott, Antinozzi, and other individual defendants in which she asserted, among other things, that Antinozzi improperly investigated the accusations against her and wrongfully obtained the arrest warrants, and that Agnes Scott was vicariously liable for these allegedly tortious acts. The defendants filed a joint motion to dismiss the complaint; in the motion, Antinozzi and the other individual defendants sought to dismiss the complaint for lack of subject matter jurisdiction due to official immunity, and Agnes Scott sought to dismiss the complaint for failure to state a claim.

The trial court denied the motion to dismiss, but on interlocutory review we reversed that decision in *Agnes Scott College v. Hartley*, 321 Ga. App. 74 (741 SE2d 199) (2013) ("*Hartley I*"), holding in Division 1 that Agnes Scott was entitled to immunity under the Georgia Tort Claims Act and in Division 2 that Hartley's complaint failed to state a claim for Agnes Scott's vicarious liability. The Supreme Court of Georgia reversed Division 1 of our opinion, holding that the Georgia Tort Claims Act provided no immunity. *Hartley v. Agnes Scott College*, 295 Ga. 458, 467 (2) (d) (759 SE2d 857) (2014) ("*Hartley II*"). Although the Supreme Court did not

address Division 2 of our opinion, *Hartley II*, supra at 460 (1) (b) n. 2, we determined on remand that Division 2 was inconsistent with the Supreme Court's ruling. *Agnes Scott College v. Hartley*, 330 Ga. App. 575, 577 (2) (768 SE2d 767) (2015) ("*Hartley III*"). See generally *Shadix v. Carroll County*, 274 Ga. 560, 563-564 (1) (554 SE2d 465) (2001) (when faced with Supreme Court reversal of our opinion, our disposition on remand regarding any portion of our opinion not addressed or considered by Supreme Court must be consistent with issues addressed and considered by Supreme Court). We based that conclusion on the Supreme Court's holding that Antinozzi was "not [a] state officer[ ] or employee[ ] under the [Georgia Tort Claims Act]," *Hartley III*, supra at 576-577 (2) (citation and punctuation omitted), its holding that Antinozzi was "not acting for a state government entity when [he] committed the alleged torts against Hartley because, inter alia, [his] actions were not directed and controlled by any specific state government entity," id. at 577 (2) (citation and punctuation omitted), and its finding that "the complaint repeatedly alleges, and the answer admitted, that [Antinozzi's] tortious conduct occurred while [he was] acting in the line and scope of (his) employment with [Agnes Scott]." Id. (citation and punctuation omitted). We therefore vacated Division 2 and "affirm[ed] the trial court's denial of

4

[Agnes Scott's] motion to dismiss Hartley's claim against [it] for respondeat superior." Id.

The case against Agnes Scott proceeded to trial at which both sides presented their cases,[2] but during jury deliberations the trial court declared a mistrial due to juror misconduct. Agnes Scott then moved for judgment notwithstanding the mistrial, arguing that it could not be held vicariously liable for Antinozzi's acts because there had been no evidence presented at trial that Agnes Scott directed those acts. The trial court denied the motion, and we granted interlocutory review.

2. *Record deficiencies.*

As a preliminary matter, we note that the appellate record is incomplete. In Agnes Scott's notice of appeal, it asked that nothing be omitted from the appellate record and stated that a transcript of the proceedings would be submitted for inclusion in the record. The trial transcript, however, is missing certain evidence that was presented to the jury. It does not include any of the exhibits that were admitted into evidence at trial, and it does not clearly reflect which portions of videotaped statements, deposition testimony, and a court hearing were played to the jury. "[I]t is

---

[2] At this point, Antinozzi and the other individual defendants were no longer parties to the action.

5

critical that the certified trial transcript reviewed by an appellate court speak the truth so that the appellate court can conduct its review with the knowledge that the transcript accurately reflects what took place in the trial court[.]" *State v. Nejad*, 286 Ga. 695, 697 (1) (690 SE2d 846) (2010). Although we could remand the case to the trial court for completion of the record, see *Galardi v. Steele-Inman*, 259 Ga. App. 249, 249-250 (576 SE2d 555) (2002) (remanding case for completion of record where transcript did not include all evidence presented to jury, including portion of videotaped deposition), we will nevertheless proceed, in the interest of judicial economy and efficiency, because we can resolve the issue in this case on facts not in dispute and on the record available to us.

3. *Vicarious liability.*

Our resolution of this appeal turns on the applicable standard for vicarious liability. Agnes Scott argues that it cannot be held vicariously liable for Antinozzi's acts, and therefore is entitled to judgment notwithstanding the mistrial, because there was no evidence presented at trial that it directed the allegedly tortious behavior. Hartley argues that she was not required to show that Agnes Scott directed Antinozzi's acts, but only that it had the power to direct those acts because Antinozzi performed them in the course and scope of his employment.

6

As detailed below, the applicable standard depends upon the capacity in which Antinozzi was acting when he engaged in the allegedly tortious acts. The undisputed fact that Antinozzi was working full-time for Agnes Scott as a campus policeman permits a finding that he was acting solely in his capacity as Agnes Scott's servant, subjecting Agnes Scott to vicarious liability for Antinozzi's conduct taken within the scope and course of his employment. Agnes Scott concedes that Antinozzi acted within the scope and course of his employment. So the trial court did not err in denying the motion for judgment notwithstanding the mistrial.

(a) *The applicable standard for Agnes Scott's vicarious liability depends on the capacity in which Antinozzi was acting.*

In determining the vicarious liability of Agnes Scott, a private employer, for the allegedly tortious acts of its campus policeman, Antinozzi, the "proper focus of analysis is to determine in what capacity [Antinozzi] was acting at the time the tort arose." *Ambling Mgmt. Co. v. Miller*, 295 Ga. 758, 761 (2) (764 SE2d 127) (2014). Our Supreme Court has described three possible capacities in which a privately-employed person with law enforcement powers might be acting: (1) as a servant or agent of the private employer, (2) as a "public officer," or (3) in a dual capacity as both a private servant and a public officer. Id. at 765 (3); see also *Pounds v. Central*

7

*of Ga. Ry. Co.*, 142 Ga. 415, 418 (83 SE 96) (1914) (considering, in determining vicarious liability, whether city police officer employed by railway company was "the agent of the city exclusively; or was he the agent of the company, with superadded police powers; or was he acting in a dual capacity").

When an employee with law enforcement powers is acting in his capacity as the servant of a private employer, the employer may be held vicariously liable for torts committed while the employee was "acting within the scope of his general duties as the servant of the [employer] to arrest people who violated the law or who created disorder on [the employer's] premises." *Ambling Mgmt. Co.*, 295 Ga. at 762 (2) (citing *Exposition Cotton Mills v. Sanders*, 143 Ga. 593, 595 (85 SE 747) (1915) (involving watchman authorized by private employer to arrest persons violating the law, injuring company property, or creating disorder)). See generally *Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010) ("When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master.") (citation omitted).

If, however, the employee is acting in his capacity as a public officer, the employer's vicarious liability is more limited; "the [private employer would not be

8

liable, unless [the tortious act] was done at the direction of the company." *Ambling Mgmt. Co.*, supra at 762 (2) (citing *Pounds*, supra (involving railway employee acting solely in capacity as city police officer)). The capacity in which the employee is acting generally is a question of fact. See *Ambling Mgmt. Co.*, supra at 765 (3).

Citing the law-of-the-case rule, Agnes Scott argues that our previous decision in *Hartley III* requires us to apply in this case the more limited vicarious liability standard applicable when the officer is acting either solely as a public officer or in a dual capacity. See OCGA § 9-11-60 (h) ("any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be"). Agnes Scott points to the following statement in *Hartley III*: "[W]hen the complaint's allegations are construed in the light most favorable to Hartley, [Agnes Scott] has not established that Hartley could not possibly present evidence that [Antinozzi] was acting under the direction of [Agnes Scott] at the time of [his] alleged tortious conduct." *Hartley III*, 330 Ga. App. at 577 (2).

This statement, however, is not a ruling that Hartley *must* present evidence that Antinozzi was acting specifically under Agnes Scott's direction to prevail against Agnes Scott on a theory of vicarious liability. It is merely support for the *Hartley III*

9

court's ruling that the allegations of Hartley's complaint were sufficient to avoid dismissal for failure to state a claim. See *Hartley III*, supra at 576-577 (2). Cf. *Nelson v. Bd. of Regents of the Univ. System of Ga.*, 307 Ga. App. 220, 228 (2) (704 SE2d 868) (2010) (holding that previous denial of summary judgment "decide[d] nothing except that under the evidence before the court at that time there can be rendered no judgment as a matter of law") (citation and emphasis omitted). We did not expressly rule in *Hartley III* on the issue of Antinozzi's capacity or on the standard of vicarious liability dictated by that capacity. "Without an express ruling on the [issue of Antonizzi's capacity and the vicarious liability standard dictated by that capacity], the law of the case rule as articulated in OCGA § 9-11-60 (h) is inapplicable here." *Hicks v. McGee*, 289 Ga. 573, 578 (2) (713 SE2d 841) (2011) (citations omitted).

(b) *The undisputed fact that Antinozzi was working full-time for private employer Agnes Scott permits a finding that he was acting solely in the capacity of Agnes Scott's private servant, rather than as a public officer.*

Critical to Agnes Scott's argument that it is entitled to judgment notwithstanding the mistrial is its argument that, as a matter of law, Antinozzi was acting in a public capacity when he investigated the allegations against Hartley. But if there was any evidence that Antinozzi was acting solely in his capacity as Agnes

10

Scott's servant rather than as a public officer, then, as explained above, Agnes Scott could be found vicariously liable for acts taken by Antinozzi within the course and scope of his Agnes Scott employment.

We start, therefore, by considering the meaning of the term "public officer." Our Supreme Court has described a public officer to be "any individual who has a designation or title given to him by law, and who exercises functions concerning the public assigned to him by law." *Brown v. Scott*, 266 Ga. 44, 45 (1) (464 SE2d 607) (1995) (citations and punctuation omitted). Accord *Everetteze v. Clark*, 286 Ga. 11, 12 (1) (685 SE2d 72) (2009); *McDuffie v. Perkerson*, 178 Ga. 230, 234 (173 SE 151) (1933). See also *Fowler v. Mitcham*, 249 Ga. 400, 401 (291 SE2d 515) (1982) (in holding "policeman" to be "officer" rather than merely "employee" of municipality, citing definition of "officer" as one having, among other things, "requirement of oath" and "fact of duties being described by law"). A public officer has duties to the public, separate and apart from any duties to a private employer. See, e.g., *Anthony v. American Gen. Financial Svcs.*, 287 Ga. 448, 451-452 (1) (b) (697 SE2d 166) (2010) (notary public, although privately employed by bank, was public officer with public duties that he had sworn to discharge properly). Those "duties to the public are superior to any private duties to [a private] employer[ ]." Id. (citations and footnote

11

omitted). Compare *City Council of Augusta v. Owens*, 111 Ga. 464, 478-479 (36 SE 830) (1900) (supervisor of city-owned quarry, whose powers and duties were defined by the city itself rather than by statute or common law, was not a public officer).

Agnes Scott concedes that Antinozzi was its full-time employee when he engaged in the allegedly tortious acts, and our Supreme Court ruled in *Hartley II* that Antinozzi was not a state officer or employee protected by the Georgia Tort Claims Act. 295 Ga. at 462 (2) (a). See also *Corp. of Mercer Univ. v. Barrett & Farahany, LLP*, 271 Ga. App. 501, 503-504 (1) (a) (610 SE2d 138) (2005) (holding, in construing applicability of Open Records Act, that "the mere fact that [private campus policemen] are given authority to perform certain functions by the Campus Policeman Act and the Georgia Peace Officers Training Act does not make them officers or employees of a public office or agency"), superseded by statute on other grounds as stated in *Smith v. Northside Hosp.*, 302 Ga. 517, 529 (2) (807 SE2d 909) (2017). Nevertheless, Agnes Scott argues that, as a POST-certified campus policeman, Antinozzi was performing public services for the state. See OCGA § 35-8-1 et seq. We disagree.

Under the plain language of the Campus Policeman Act, Antinozzi derived his authority to exercise law enforcement powers from his employer, Agnes Scott, rather

12

than from his POST certification. A campus policeman's law enforcement powers are set forth in OCGA § 20-8-2, which provides:

> On the campus of an educational facility, a campus policeman employed by such educational facility who is certified in accordance with [OCGA §] 20-8-3 *and when authorized by the governing body or authority of such educational facility* shall have the same law enforcement powers, including the power of arrest, as a law enforcement officer of the local government with police jurisdiction over such campus.

(Emphasis supplied.) And while OCGA § 20-8-3 requires a campus policeman to be POST-certified before exercising law enforcement powers, it "does not require [a POST-certified] campus policeman [to] exercise the powers set forth in [OCGA §] 20-8-2." Read together, these Code sections show that POST certification does not itself confer law enforcement powers on a campus policeman but is merely a prerequisite to the campus policeman's exercise of those powers. See generally *Zilke v. State*, 299 Ga. 232, 235 (787 SE2d 745) (2016) (POST certification "simply means [that a person] has met the minimum requirements to be a 'peace officer' in this state") (citations omitted). The decision whether or not a POST-certified campus policeman may exercise law enforcement powers rests with the educational facility.

Although Agnes Scott argues that there is no evidence that it specifically directed Antinozzi's investigation of and other actions pertaining to Hartley, there is no dispute that Agnes Scott generally authorized Antinozzi to exercise law enforcement powers in his work as its campus policeman pursuant to OCGA § 20-8-2. Instead, Agnes Scott could have chosen to forbid Antinozzi from exercising any law enforcement powers on its campus, despite his POST certification. So to the extent Agnes Scott argues that Antinozzi's POST certification imposed upon him a public duty to exercise law enforcement powers that emanated from the state and went beyond Antinozzi's responsibilities to and authority from Agnes Scott, we find no merit in that argument.[3] See generally *Worthy v. State*, 307 Ga. App. 297, 304 (3) (704 SE2d 808) (2010) (rejecting argument of POST-certified campus policeman that although he was off-duty and not on campus, he nevertheless had a duty to arrest a person who violated the law in his presence).

Our analysis would be different if Antinozzi's authority to exercise law enforcement powers came from a source *other than* OCGA § 20-8-2. For example, OCGA § 20-3-72 gives certain arrest powers to "campus policemen and other security

_____

[3] Although at trial Agnes Scott presented expert witness testimony suggesting a different interpretation of the scope of a POST-certified campus policeman's duties, we are not bound to accept that witness's opinion of the law.

personnel" of the University System of Georgia. Similarly, peace officers have law enforcement powers emanating from their appointment by a governmental unit. See *Margerum v. State*, 260 Ga. App. 398 (579 SE2d 825) (2003). See also OCGA § 35-8-2 (8) (defining "peace officer" to require employment by state or its political subdivisions). The cases cited by Agnes Scott for the proposition that its vicarious liability should be limited employ this different analysis because they involve peace officers who — in addition to working part-time for private employers — were working for the state or its political subdivisions. See *Ambling Mgmt. Co.*, supra, 295 Ga. 758 (city police officer); *Pounds*, supra, 142 Ga. 415 (city police officer); *Touchton v. Bramble*, 284 Ga. App. 164 (643 SE2d 541) (2007) (county detective); *American Multi-Cinema v. Walker*, 270 Ga. App. 314 (605 SE2d 850) (2004) (county deputy sheriff); *Page v. CFJ Properties*, 259 Ga. App. 812 (578 SE2d 522) (2003) (county police officer); *Wilson v. Waffle House*, 235 Ga. App. 539 (510 SE2d 105) (1998) (county police officer); *Sommerfield v. Blue Cross & Blue Shield of Ga.*, 235 Ga. App. 375 (509 SE2d 100) (1998) (city police officer); *Beck v. Paideia School*, 191 Ga. App. 183 (381 SE2d 132) (1989) (city police officer). These decisions are inapposite, because in this case there was not undisputed evidence that Antinozzi derived his law enforcement powers from a source other than OCGA § 20-8-2.

15

For these reasons, we do not agree with Agnes Scott that, as a matter of law, Antinozzi was acting in the capacity of a public officer when he investigated and obtained arrest warrants on Hartley. There is a basis for finding that he was working solely in the capacity as Agnes Scott's servant, albeit a servant with "superadded police powers." *Pounds*, 142 Ga. at 418.

(c) *The undisputed fact that Antinozzi was working within the scope and course of his employment with Agnes Scott permits the imposition of vicarious liability.*

Because there is a basis for finding that Antinozzi was working as Agnes Scott's servant when he committed the allegedly tortious acts, Agnes Scott may be vicariously liable for those acts if Antinozzi committed them while acting within the general scope of his duties for Agnes Scott. See *Ambling Mgmt. Co.*, 295 Ga. at 762 (2). As discussed above, Agnes Scott does not dispute that Antinozzi was working within the scope and course of his employment when he investigated and obtained the arrest warrants for Hartley. So the trial court did not err in denying Agnes Scott's motion for judgment notwithstanding the mistrial.

*Judgment affirmed. Ray and Rickman, JJ., concur.*