# Richmond

ROSCOE R. COSBY v. S. M. DURHAM.

January 16, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*John B. Welsh,* for the plaintiff in error.

No appearance for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

R. R. Cosby, plaintiff in the lower court, and plaintiff in error in this court, filed his petition under Code, section 5490, alleging that there was a dispute over the boundary line between him and S. M. Durham, his coterminous land owner on the east and south, and prayed that the true boundary line on these two sides of his land be established. To this petition S. M. Durham filed pleas of not guilty, and the statute of limitations. On the issues thus joined, the jury returned a verdict for the defendant, on which judgment was entered by the trial court. To that judgment this writ of error was awarded.

Prior to 1904, the separate tracts of land, now owned by plaintiff and defendant, constituted one tract, which was owned by John and Kasper Bulheller, the common grantors in the chain of title of each litigant. These common grantors first sold and conveyed the Cosby land by two deeds, thus cutting it off from the land now owned by defendant. In every deed, in the chain of title from the Bulhellers to plaintiff, with slight variations, probably typographical errors, the land is described by the same courses and distances. These distances, with some variation in the bearings, are shown on the following sketch:

On the above sketch is shown the separate tracts now owned by plaintiff and defendant. The boundaries in

dispute, and the lines claimed by plaintiff, on the sketch, are from A to B, and from B to C. The dotted line designated "old fence" just within lines, are the boundary lines claimed by defendant.

Subsequent to the date the Cosby land was cut off and sold by John and Kasper Bulheller, they sold the remainder of the tract now owned by Durham. In every deed in the chain of title from the Bulhellers to defendant, the land is described in part substantially as follows:

"Beginning at the point of the intersection of a road running from Evergreen Cemetery with the southern line of Nine Mile Road 157.14 feet to the point of intersection with the land or property formerly the home of Charles Bruner (now the home of plaintiff), thence southwardly along said line 422.40 feet; thence westwardly 211.20 feet to the point of intersection with the line of the Simpson property; * * *."

The other distances and bearings are shown on the sketch. Thus in all the deeds and plots under which both plaintiff and defendant claim title, point A, on the sketch is described as being 157.14 feet from the point of intersection of the southern line of Nine Mile Road with the intersection of the western line of a thirty foot road running from Evergreen Cemetery; the distance from point A to point B is stated to be 422.40 feet, and the distance from B to C is stated to be 211.20 feet. Not one of the five engineers, who were called to testify for the different parties, had any difficulty in locating these lines upon the land, when they followed the description in the deeds and the plats filed therewith.

Defendant made no attempt to contradict these facts, but contended in the lower court (he made no appearance in this court) that in 1917 plaintiff had made a binding oral agreement with A. F. Neumann, the then owner of defendant's land, to the effect that the boundary lines between the parties should be as indicated by the broken line on the sketch, and that defendant, and those under whom he claims, had held adverse possession of the nar-

row strip between the dotted line, and the lines now claimed by plaintiff for the statutory period.

A. F. Neumann, called as a witness for defendant, testified that he owned the land of defendant in the years 1916 and 1917; that some time in 1917 Cosby, who had recently purchased the land now owned by him, called his attention to the fact that the fence he had erected was not on the boundary line. He stated, "As near as I remember—it has been so many years ago, I don't remember much about it now—I think, after he had it surveyed, we agreed on his line and the fence was moved to the new line." He further said that about that time he sold his land to P. J. Bagby, but he could not recall whether he, Cosby, or Bagby moved the fence. He did not think the fence on, or near, the southern line, was ever mentioned in the discussion, but was under the impression that no question was ever raised about that line, or that fence.

█ This rather indefinite testimony fails to show an agreement to establish a new boundary line along the fence as changed, but shows on the contrary, an intention to run the true boundary lines as described by the deeds and plats, and to maintain these as the actual boundary lines between the parties. This becomes reasonably clear when the testimony for the plaintiff is considered. He said that some time after he bought his land in 1917, he had it surveyed by R. E. Duval, and had four concrete blocks six by eight inches, with steel markers in the center indicating the exact corners, placed on the four corners of his land. Duval testified that he placed these markers on the corners and rechecked them by the description in the deeds. The two markers indicating the corners on the Nine Mile Road were still in place at the time of the trial, but the two markers indicating the southeastern and southwestern corners of the plaintiff's land had been removed; when and by whom none of the witnesses seemed to know. Both the plaintiff and Duval testified that at the time the markers were placed on the corners, the fence was near, but not on the eastern and southern boundary

lines, and that the markers at the northeast, southeast and southwest corners were outside of the fence.

The testimony of one witness, Joseph T. Childrey, eliminates from our consideration the question of adverse possession. He testified, and the record so shows, that he was the owner of defendant's land in 1924 and 1925; that he bought and sold it by the description in the deed; that his attention was called to the concrete markers on the southeast and southwest corners of the plaintiff's land which he regarded as correct; that he saw the "old fence;" that it had rotted down in many places; that he could not recall how close it was to the true boundary line, as he paid very little attention to it because he knew it was not on the line, and that he at no time claimed any part of the narrow strip of land between the fence and the line extended between the concrete markers. This evidence makes a complete break in the continuity of adverse possession. There is a scintilla of evidence suggesting that the concrete markers placed on the northeast and northwest corners of plaintiff's land were not in the proper location. There is another suggestion in the testimony for defendant tending to show that the southeast and southwest boundary lines established in 1917, were in line with the "old fence," but the evidence on these points is so vague and indefinite that a verdict based thereon would not be permitted to stand.

A careful study of the entire record reveals that the true boundary lines between the land of plaintiff and defendant runs from A to B, and from B to C, as indicated on the above sketch, and that any other conclusion would be without evidence to support it.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded to the circuit court with direction to enter judgment establishing the boundary lines here in controversy in accordance with the views expressed in this opinion.

*Reversed and remanded.*