24985.   KENT *v.* SOUTHERN RAILWAY COMPANY, *et al.*

DECIDED FEBRUARY 28, 1936.

*Ben C. Williford,* for plaintiff.

*Neely, Marshall & Greene, W. Neal Baird,* for defendants.

GUERRY, J.   J. G. Kent brought suit against the Southern Railway Company and W. W. Waits.   Error is assigned upon the order sustaining a general demurrer to the petition.   It was alleged: On September 6, 1934, W. W. Waits was a conductor of the railway company, and brought a train consisting of an engine and three cars to a point about twenty feet from where the company's side-track crossed Circle Street in the City of Atlanta and near where said side-track enters the property of the Exposition Cotton Mills.   The plaintiff and about fifty other persons who worked at said mill were gathered along the intersection of Circle Street and the side-track, blocking the entrance of the train to the mills. Waits advised the plaintiff and the persons with him that it was necessary for him to place some of the cars of his train in the yard of the mill and to take other cars therefrom, and stated to the plaintiff and the others that they were blocking his train and were preventing him from discharging his company's business, and re-

quested them to move off said track that he might proceed with the performance of his duties. Neither the plaintiff nor the other persons moved from their positions, as they were at the time on a strike and picketing the mill. Waits then cursed and swore at said gathering, and threatened their lives and told them he would move them; but they silently maintained their positions. Waits went off and returned in about ten minutes with T. O. Sturdivant, chief of police of the City of Atlanta, who was armed with a gun, and on his arrival counseled, commanded, and ordered Sturdivant to shoot petitioner and others so gathered as aforesaid, and acting upon and pursuant to said order Sturdivant did shoot petitioner "in the face, mouth, and eyes with a large and heavy gun loaded with some form of heavy substance" unknown to petitioner, and "petitioner's eyes were mashed, bruised, blinded, burnt, and contused; his mouth and face were greatly bruised, burnt, and contused; his mouth and lungs, by reason of said shooting, were scorched, burned, and caused to bleed profusely." After said persons so assembled at, along, and on said crossing were driven and cuffed therefrom, Waits took said train to the mill, left some cars, and removed others.

From the allegations it may be seen that the plaintiff was not a mere negligent trespasser, but that he was a criminal trespasser. The Code of 1933, § 26-5301, declares: "Any two or more persons who shall assemble for the purpose of disturbing the public peace or committing any unlawful act, and shall not disperse on being commanded to do so by a judge, justice, sheriff, constable, coroner, or other peace officer, shall be guilty of a misdemeanor." Section 94-9908 further declares: "Any person intruding unlawfully upon the constructed track of a railroad company, contrary to the will of the company, shall be guilty of a misdemeanor." Section 26-7313 declares that the obstruction of, or counseling others to obstruct, a railroad shall be a misdemeanor. Section 26-7315 makes it criminal to interfere with the operation of any train or engine. The plaintiff was engaged, according to the allegations of his petition, in an active, wilful, deliberate violation of several penal statutes of this State. The conductor in charge of the train, according to the allegations, had observed every requirement possible to induce the plaintiff to desist from his admitted criminal act, and the plaintiff wilfully and purposely con-

tinued it. The conductor himself, under these allegations, would have been justified in using such force as was necessary to prevent the continued blocking of the track and train. Peaceful requests, violent and abusive language and threats of running the train over them had entirely failed to prevent the plaintiff from continuing his criminal enterprise. The means then used to stop the continuation of such action by the plaintiff was not a gun loaded with powder and ball, for it is not so described in the petition ·(which must be construed most strongly against the pleader), but, from the description, the load was a substance evidently prepared by the police to cause the dispersal of a crowd, without causing death to its members. It is not alleged that such substance was tear-gas but the result alleged shows it was somewhat similar. The petition nowhere alleges that the action taken was unnecessary, or that the force used was greater than that required to accomplish the right of removing the plaintiff, which was being carried out by the highest officer in the enforcement of the law in the City of Atlanta. A person may not wilfully and purposely engage in a violation of the law and then recover damages for injury which might ensue in an attempt by lawful authorities to prevent him from continuing such a course, when it is not claimed that he could have been made to desist except by the exercise of force, and it is not alleged that the force used was greater than was necessary to accomplish its object. In *Elrod* v. *Anchor Duck Mills,* 50 *Ga. App.* 531 (179 S. E. 188), it was not shown by the petition that the plaintiff in that case was in the commission of a criminal act and was refusing to desist from its continuation. The evidence showed that the plaintiff was trying to avoid being run down by the defendant's automobile, and was not warned to get out of the way. In Restatement of the Law of Torts, § 77, it is said: "The intentional infliction upon another of a harmful or offensive contact or other bodily harm by a means not intended to cause death or serious bodily harm is privileged for the purpose of preventing or terminating another's intrusion upon the actor's lands or chattels, if the other's intrusion is not privileged, and the actor reasonably believes that the other's intrusion can be prevented or terminated only by the immediate infliction of the harmful or offensive bodily contact or other bodily harm, and the means used to prevent or terminate the intrusion are reasonable,

and the actor has requested the other to desist from the intrusion and the other has disregarded the request." See also §§ 80, 142.

A distinction is and should be drawn between those cases where the trespass is active and continued after warning to desist, and those that are merely passive. One stealing a ride on a train is a criminal trespasser, and the only duty the company owes him is not to wilfully and wantonly injure him after his presence is discovered. When he is discovered and refuses to leave the train on being ordered so·to do, and resists by force, the use by the employees of possibly more force than is necessary under the circumstances, in order to put such trespasser off the train, is not negligence imputable to the company. The trespasser by such action puts himself in the position of creating a privilege for the actor to use bodily force without too many fine-drawn distinctions of reasonableness. Moreover, it is alleged that the plaintiff and fifty or more companions were purposely blocking the railroad-tracks where they crossed Circle Street in the City of Atlanta. This was a criminal act on a public street of the city, and was occurring in the presence of the chief of police. The prevention of crimes within the city and on its streets is the chief duty of such an officer. His is the duty; his the responsibility. A person whose private rights are being violated by such criminal act does not, by counseling or commanding such officer how to act, make the officer his agent. In *Bright* v. *Central of Ga. Ry. Co.*, 12 *Ga. App.* 364 (77 S. E. 372), it was held that the railroad company was not liable for an unlawful arrest by a special police officer paid by the railroad, and specially detailed to protect railroad property, when he was hired by and under the direction of the municipal authorities. In that case Judge Pottle said: "The mere fact that the company paid him did not give it a right to control his conduct as a police officer. He was not bound by any instructions the company might give in reference to making or not making an arrest in a particular instance; and since the company could not have prevented him from arresting the plaintiff, it was not responsible for any damage which resulted from the arrest." It is the general rule, in the absence of statute, that a private person or corporation is not responsible for the acts of a special police officer appointed by the public authority, but employed and paid by the private person or corporation, when the acts complained

of are performed in carrying out his duty as a public officer. Many cases supporting this will be found in the notes in 35 A. L. R. 681. The true rule with respect to such special officers employed and paid by a private person or corporation was stated in *Massachusetts Cotton Mills* v. *Hawkins,* 164 *Ga.* 594, 596 (139 S. E. 52) : "If the wrong was done by the officer as such, his employer is not liable, even if the officer exceeded his just authority; but if it was done during the course of his duty as employee, and within the scope of his employment, then the employer is liable, even if it be done in excess of authority." Thus it would seem that where the capacity in which the person acts when occupying the dual position of public officer and private employee is uncertain, a jury question is presented.

In the present case no special agency is shown between the Southern Railway Company and the chief of police of Atlanta. There existed in the defendant no right or power to control or direct the action of the chief of police on the occasion in question. The chief of police was under an independent duty of his own, by virtue of his office, to take action in the premises. He was not an employee, special or otherwise, of the defendant. The defendant is alleged to have counseled and commanded him how to act. He was under no duty or obligation to accede to the counsel or command. He was obligated to take action himself in the performance of his public duty. The fact that the action taken coincided with that advised and commanded by the defendant does not make such act the act of the defendant. It may have coincided with the intent already formed in the mind of the chief of police. It may have influenced the action of such officer, but it did not control him or take away from him the obligation to perform his independent duty, and under such circumstances make him the agent of the defendant, rather than chief of police. The statement from the *Bright case,* supra, is especially pertinent. In Restatement of the Law of Agency, § 217 (2), it is said: "A master or other principal is not liable for acts of a servant or other agent which the agent is privileged to do, although the principal himself would not be so privileged. . . So, if a peace officer who is also a servant arrests one whom he honestly believes to be a felon, although no felony has been committed, and does this in the scope of his employment, the master is not liable for the

arrest, although had the master, a private person, made the arrest personally, he would have been liable." In section 220 of the same work it is stated that a servant is "a person employed to perform service for another in his affairs, and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control. . . Those rendering service but retaining control over the manner of doing it are not servants. . . An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of the agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results." He is an independent contractor. In this case the chief of police was not an agent of the defendant. His duty and responsibility was to the municipality, and he was not bound by any instructions the conductor might give, nor could the conductor prevent any action he might in his discretion decide to take. The petition as amended failed to set out a cause of action, and was properly dismissed on demurrer.

*Judgment affirmed.* *Broyles, C. J., concurs, MacIntyre, J., dissents.*

MacIntyre, J., dissenting. The petition alleges that there were about fifty persons on a strike, who were picketing a cotton-mill, one of whom was the petitioner, that he and the other persons were standing on a side-track of a railroad company where it crossed a public street over which it was necessary for a train to run when placing cars on the side-track of said railroad leading to the cotton-mill; that the plaintiff and other pickets refused to move at the request of Waits, and were thereby blocking said track; and that Waits, an agent of the company who was in charge of one of its trains, and whose duty it was to run the train over the track at a point where the plaintiff, a trespasser, was blocking the passage thereof. Waits, the agent, would be acting within the scope of his authority if he removed the trespasser from the track in order for the train of which he was in charge to pass over said tracks; and the railroad company would not be liable for the removal of the trespasser if the agent did not use more force than was necessary. On the other hand, if Waits, the agent, while the plaintiffs were engaged in the trespass, in attempting to prevent the trespass or cause the plaintiff to desist, injured the plaintiff

by using more force than was necessary for the purpose, the company would be liable. *Georgia Railroad & Banking Co.* v. *Wood,* 94 *Ga.* 124, 126 (21 S. E. 288, 47 Am. St. R. 146). Therefore, if Waits went away and obtained the chief of police for the purpose of removing the trespasser from the track, and when the chief arrived at the scene of the trespass Waits then and there ordered the chief to shoot the plaintiff with a large and heavy gun loaded with a heavy substance, and the chief then and there in his presence shot the plaintiff, a trespasser, and if this was an unnecessary use of force for the purpose of removing the trespasser, the railroad company would be liable upon the ground that the act of the chief under the circumstances was to be regarded as the act of the servant in charge, since he was present and directing the act. The act of the chief of police was substantially the act of Waits, for he was immediately present, standing by, and directed the chief to shoot; it was as much his act as if done by his own hand. 3 Michigan Law Review, 207. "The agent or servant has ordinarily, as has been seen, no implied authority to delegate the service to a stranger; that is, to employ substitutes, or to employ strangers, on the principal's account, as assistants to aid him in performing his service. For the negligence of such strangers, therefore, the principal or master can not be held upon the ground that they were his servants or agents. In a number of cases, however, the principal or master has been held liable, either upon the ground that permitting such strangers to act was an act of negligence on the part of the servant in charge, or upon the ground that the act of such stranger was, under the circumstances, to be regarded as the act of the servant in charge, since he was personally present, directing and controlling the act." Mechem on Agency, (3d ed.), 339, § 513. If Waits, the servant, was so clearly using the chief of police as a mere instrument—a longer arm which the servant wields and controls, then the act of the chief of police is to be regarded as the act of Waits, and, if negligent, as the negligence of Waits, it would make the master liable. 3 Michigan Law Review, 216. "That the master, in directing the act to be done, has, from its nature and the circumstances under which it is to be done, impliedly authorized the servant to do it by means of the usual or proper tools or agencies, and that among those proper tools or agencies may be the casual act of a third person, not as a mere mechanical

aid or longer arm as above suggested, nor yet in such a way as to make that third person, in any contractual sense at least, the master's servant, . . but merely as a permissible tool for whose defective working under the hand of the servant the master has impliedly assumed responsibility as he has for the working of the inanimate tools or agencies that may be employed. Under such a rule, if in the progress of the work it became necessary to use a crowbar, the servant might use one; and if it became desirable or necessary to use the casual and incidental act of a third person, the servant might do that. If in such a case the servant negligently selected an improper crowbar or carelessly used a proper one, the master would be liable. So if in such a case he negligently selected an improper person or negligently used a proper one, the master would be liable." 3 Michigan Law Review, 217.

An examination of the petition shows that the only act ascribed directly to either of the defendants is that Waits, the agent in charge of the train invoked the aid of Sturdivant, chief of police of the City of Atlanta, and directed him to shoot the plaintiff in order to remove the plaintiff, who was one of about fifty persons who were blocking a railroad side-track where it crossed a public street in the city. This act is significant only as a means of imputing the conduct of the chief of police to the defendant in this suit. The agent of a railroad company, acting within the scope of his authority, has a right forcefully to eject a trespasser who is blocking the railroad-track and preventing the delivery of cars' at their destination. If in ejecting such a trespasser more violence is used than is necessary for the purpose, the company and its agents are liable for damages resulting from such excess of violence. In Jardine v. Cornell, 50 N. J. L. 486, it was said: "A police officer who, in response to the invitation of the regular agent of the company, assists in ejecting a passenger becomes a special agent of the company for that purpose, and is subject to the same rule in regard to excessive violence in executing the regulation of the company." See Bayley v. Manchester &c. Ry. Co., 7 Law Reports, Court of Common Pleas (35 Victoria) 415. If Sturdivant was acting purely in his capacity as a police officer, the railway company is not responsible for his acts. Only when the railway company through its authorized agent has employed or directed such police officer to act for it, does it become responsible.

If the chief of police acted, in his alleged attack upon the plaintiff, solely in his capacity as an officer, and not by and under the direction of the agent in charge of the train, the defendant is not responsible. I think the petition discloses, either expressly or by necessary implication, that the chief of police in his assault upon the plaintiff did not represent the public, but the defendant. The petition does not show any attempt or intention to arrest the plaintiff for a breach of the peace, or for any other violation of law, but only to force his removal from the railroad-track. Foster *v.* Grand Rapids Ry. Co., 140 Mich. 689, 693. The petition shows that the police officer was directed by the agent of the railroad company, acting within the scope of his authority then and there, to shoot the plaintiff in order to protect the property of the railroad company. In other words, where the police officer represents the railroad, and not the public, such railroad may become liable for his acts; and in the instant case I think the petition alleges that the act done by the policeman was in protection of the railroad's property, and that under the allegations of the petition the policeman was representing the railroad rather than the public. Andrezeg Zygmuntowicz *v.* American Steel & Wire Co., 240 Mass. 421. If in ejecting the trespasser the policeman used more force than was necessary for that purpose, the company and its agents are liable in damages. And if the act of shooting was done by the servant to advance the interest of his master, because the servant is an officer of the State or municipality, the master is liable. Restatement of the Law on Agency, 553, § 245.

The petition in this case differs from that in *Bates* v. *Southern Ry. Co.,* 52 *Ga. App.* 576 (183 S. E. 248), in that by amendment the plaintiff alleged that he and the other persons were standing on the railroad-track and blocking the entrance of the train into the cotton-mill ground, and in view of this amendment; it seems to me that Waits, the agent in charge of the train, was acting within the scope of his authority when he undertook to remove the plaintiff and the other persons from the railroad-track in order that he might properly operate the train. The plaintiff alleges that he and others "were only standing peacefully assembled, as they had a right to do; . . that the said Sturdivant disembarked from his automobile, and acting under instructions and the commands of the said Waits, without any warning of any kind

whatsoever, did wilfully and wantonly shoot your petitioner squarely in the face, eyes, and mouth, as aforesaid," thereby permanently injuring and damaging him, and "that after the said action as aforesaid your petitioner, fearing further violence, together with the other members assembled as aforesaid, moved and were moved and carried away from said point, your petitioner being taken .home." By necesary implication the petition alleged that the plaintiff was not taken away from the scene to the police station as a disorderly person, and that there was no arrest. I can not say as a matter of law that the allegations of the petition show that the policeman was acting solely for the public, and not solely for the company in order to protect its property. I think the case should have been submitted to a jury to determine whether or not the policeman was directed by the agent of the railway company, acting within the scope of his authority, to shoot the plaintiff in order to protect the property of the company, the servant being then and there present, and whether or not the police officer was acting for the company in shooting as directed, or was acting as an officer of the municipality; and if it should be determined by the jury that the police officer was so acting for the company, the company would be liable if in removing the trespasser the officer employed excessive force. I think the court erred in sustaining the demurrer.