**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**April 12, 2022**

# In the Court of Appeals of Georgia

A22A0612. PARADISE ENTERTAINMENT GROUP, INC. et al.
    v. FAVORS.

PHIPPS, Senior Appellate Judge.

In this personal injury action, defendants Paradise Entertainment Group, Inc.,
d/b/a Magic City ("PEG"), M-Entertainment Properties, LLC d/b/a Magic City
("MEP"), and M-Entertainment & Consultant Service, Inc. ("MEC")[1] (collectively,
"the Magic City Defendants") appeal from the partial denial of their motion for
summary judgment, following our grant of their application for interlocutory review.
See *Paradise Entertainment Group v. Favors*, Case No. A21I0236 (Aug. 11, 2021).
The Magic City Defendants raise several challenges to the trial court's summary
judgment rulings. For the reasons that follow, we conclude that the Magic City

---

[1] MEC also is referred to in the record as "-M- Entertainment and Consulting
Service, Inc."

Defendants are entitled to summary judgment on all remaining claims against them and reverse the judgment of the trial court on that basis.

Viewed in the light most favorable to plaintiff Demetric Favors, the nonmoving party, see *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018), the record shows that, on the night in question, on-duty uniformed Atlanta Police Officer Emanuel Thompson[2] parked his marked patrol car in a parking lot adjacent to Magic City, an adult entertainment club in Atlanta.[3] Officer Thompson was in that area in his capacity as a police officer and at the direction of a supervisor, as there had been a shooting nearby the night before. At that time, defendant L.A. Enterprise Security Services ("LA Security"), which is owned by LaTiesa Alford,[4] provided private security services for Magic City and its adjacent parking lot. Neither LA Security nor Magic City employed Officer Thompson or paid him to be there. In fact, Magic City never hired off-duty police officers for security, and Alford did not

---

[2] Officer Thompson's first name also is spelled "Emmanuel" in the record.

[3] Magic City is owned by MEP and operated by PEG, and the parking lot adjacent to the club is owned by a third party and leased to MEC.

[4] Alford's first name also is spelled "Latiesa" in the record.

know Officer Thompson, who never has been an employee, agent, or independent contractor of Magic City.

Favors also visited Magic City that night. While he was inside the club, another man (who had arrived with Favors's group) took some money from the stage and ran out of the club. Around that time, Favors's group began exiting the club.

Outside of the club, Favors got into an SUV with some other men. Also around that time, Alford told Officer Thompson that one or two men had robbed a patron in the club, and she gave Officer Thompson a description of the clothing worn by the suspect or suspects. Officer Thompson then began looking for suspects in the parking lot. As the SUV in which Favors was a passenger started to exit the lot, Devin Thompson (who worked for LA Security) told Officer Thompson that one or more persons in the vehicle were suspects in the theft. Devin Thompson and Officer Thompson tried to stop the SUV, to no avail. Around that time, Officer Thompson activated the blue lights on his patrol car, and Alford removed some traffic cones from in front of the patrol car to enable it to leave. According to Devin Thompson, Alford told Officer Thompson to move his patrol car to block the SUV's exit. Officer Thompson did not move his car, and, as the SUV sped up and continued to move through the parking lot, the officer discharged his service firearm into the vehicle five

3

times, striking Favors in the thigh and ankle. Officer Thompson later resigned from the police force and, as a result of the shooting, pled guilty to simple assault.

Favors subsequently sued Officer Thompson, Alford, LA Security, and the Magic City Defendants for negligence, premises liability, and related claims arising out of the shooting. As relevant here, Favors sought to hold the Magic City Defendants liable for Officer Thompson's actions on the ground that Officer Thompson acted as an agent of the Magic City Defendants when he shot Favors. Following discovery, the Magic City Defendants moved for summary judgment on grounds that, as relevant to this appeal: (i) there is no evidence that they employed, contracted with, controlled, or directed Officer Thompson at the time of the shooting; (ii) the shooting was not foreseeable; and (iii) Favors cannot show that any alleged acts of the Magic City Defendants proximately caused his injuries.

The trial court granted summary judgment to the Magic City Defendants on Favors's premises liability claim, but denied summary judgment on his remaining claims for ordinary negligence; imputed liability; wrongful retention, supervision, hiring, entrustment, and training; punitive damages; and OCGA § 13-6-11 attorney fees. In pertinent part, the court concluded that disputed factual issues remain as to: (i) whether, at the time of the shooting, Officer Thompson was working in a "dual

4

agent capacity" as a police officer and as an agent of the Magic City Defendants, in furtherance of their business interests; and (ii) whether Alford and Devin Thompson, while acting as agents for the Magic City Defendants, acted reasonably during the events leading up to the shooting. This interlocutory appeal followed.

We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovants. *City of St. Marys*, 346 Ga. App. at 508-509. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508; see OCGA § 9-11-56 (c). "[T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008) (citation and punctuation omitted); see OCGA § 9-11-56 (c). If the movant meets this burden, the nonmovants "cannot rest on [their] pleadings, but rather must point to specific evidence giving rise to a triable issue." *Ellison*, 294 Ga. App. at 819 (3) (a) (citation and punctuation omitted); see OCGA § 9-11-56 (e).

5

1. (a) On appeal, the Magic City Defendants first challenge the denial of summary judgment on Favors's claims for ordinary negligence and imputed liability.[5] In those claims, Favors seeks to hold the Magic City Defendants liable for their own alleged negligence, as well as the alleged negligence of Alford and LA Security.[6] The Magic City Defendants contend that, because Officer Thompson's decision to shoot into the SUV was unforeseeable, Favors cannot establish that any acts attributable to them proximately caused his injuries. We agree.

To state a cause of action for negligence in Georgia, "a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841 (1) (797 SE2d 87) (2017) (citation and punctuation omitted); accord *Wilcher v. Redding Swainsboro Ford Lincoln Mercury*, 321 Ga. App. 563, 565-566 (1) (743 SE2d 27) (2013). As to causation, "[t]o recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury." *Atlanta Obstetrics*

---

[5] We need not address this enumeration of error to the extent that it pertains to Favors's claim for premises liability, as the trial court granted summary judgment to the Magic City Defendants on that claim.

[6] Favors's claims that the Magic City Defendants also should be held liable for the alleged negligence of Officer Thompson are addressed in Division 2, below.

*& Gynecology Group, P.A. v. Coleman*, 260 Ga. 569, 569 (398 SE2d 16) (1990); accord *Goldstein, Garber & Salama*, 300 Ga. at 841 (1) ("[T]o recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty."); *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2004) ("[S]ummary judgment is appropriate in negligence cases when, viewing all the facts and reasonable inferences from those facts in a light most favorable to the plaintiff, the evidence does not create a triable issue on the question of proximate cause.").

Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred. In this regard, a negligent actor who breaches a duty to another is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. It is important to recognize that probable, in the rule as to causation, does not mean "more likely than not," but rather "not unlikely"; or, more definitely, "such a chance of harm as would induce a prudent man not to run the risk; such a chance of harmful result that a prudent man would foresee an appreciable risk that some harm would happen."

The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g.,

7

intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery. The determination of whether proximate cause exists requires both factfinding in the "what happened" sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. And, while proximate cause is ordinarily a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.

Where . . . a defendant claims that its negligence is not the proximate cause of the plaintiff's injuries, but that an act of a third party intervened to cause those injuries, the rule is that an intervening and independent wrongful act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, insulating and excluding the negligence of the defendant. But, this rule does not insulate the defendant if the defendant had reasonable grounds for apprehending that such wrongful act would be committed. Stated differently, if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

*Johnson v. Avis Rent a Car System*, 311 Ga. 588, 592-593 (858 SE2d 23) (2021) (citations and punctuation omitted); see also *Brown*, 265 Ga. App. at 893-894 (1) ("an independent, intervening criminal act of a third party, without which the injury would

8

not have occurred, will be treated as the proximate cause of the injury," thereby breaking the causal connection between the defendants' negligence and the injury, unless the intervening criminal act "was a reasonably foreseeable consequence of the defendants' conduct") (citations and punctuation omitted). "[P]roximate cause is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." *Atlanta Obstetrics & Gynecology Group*, 260 Ga. at 569 (citation and punctuation omitted).

Here, pretermitting whether there is any evidence suggesting that the Magic City Defendants, Alford, or LA Security breached a duty owed to Favors, he has identified no record evidence from which a jury could find that Officer Thompson's act of shooting into the SUV in which Favors was a passenger (in response to allegations that a robbery suspect was in the SUV) was "probable, according to ordinary and usual experience," or "could reasonably have been anticipated, apprehended, or foreseen by" the Magic City Defendants.[7] *Johnson*, 311 Ga. at 592-593 (citations and punctuation omitted); see also *Brown*, 265 Ga. App. at 893-894 (1).

---

[7] Indeed, the trial court recognized as much when it agreed with Favors's concession that the record does not support a finding that Officer Thompson's decision to shoot into the SUV was foreseeable for purposes of Favors's premises liability claim. And Favors similarly characterizes the shooting as an "unjustified use of force," "outrageously aggressive," and "unlawful."

Consequently, the Magic City Defendants are entitled to summary judgment on Favors's claims for ordinary negligence and imputed liability to the extent those claims are premised on the actions of the Magic City Defendants, Alford, or LA Security. See *Johnson*, 311 Ga. at 589-590, 594-597 (concluding that the defendants — a car rental company, its regional security manager, the operator of the rental location at issue, and the operator's owner — could not be liable under theories of negligence and vicarious liability for injuries to the plaintiffs that occurred when a company employee stole a company car and, following a high-speed chase, crashed into a wall on which the plaintiffs were sitting, because the evidence did not show "that a crash resulting in serious injuries would be the reasonably foreseeable consequence of the [employee's] theft"); *Massachusetts Cotton Mills v. Hawkins*, 164 Ga. 594, 598-599 (2) (139 SE 52) (1927) (holding that a corporation, the manager of which knowingly procured a void arrest warrant, could not be liable for the arresting officer's subsequent act of killing the suspect because, while the act of procuring the warrant "would naturally and ordinarily bring about the arrest" of the suspect, it "did not ordinarily and naturally produce the death of the deceased"); *Brown*, 265 Ga. App. at 889-890, 893 & 895-896 (1) (holding that the defendant day-trading firms were entitled to summary judgment in an action brought by victims of a work-place

10

mass shooting because there was no evidence that the shooting spree was a reasonably foreseeable outcome of the firms' actions).

(b) The trial court did not expressly address Favors's claims for wrongful retention, supervision, hiring, entrustment, and training (of Officer Thompson, LA Security, and Alford) in its order denying summary judgment. Nevertheless, our ruling in Division 1 (a) — that Officer Thompson's decision to shoot into the vehicle in which Favors was a passenger was not foreseeable to the Magic City Defendants — necessarily defeats those claims, which ultimately seek redress for the same harm, i.e., the injuries suffered by Favors in the shooting. See, e.g., *Allen v. Zion Baptist Church*, 328 Ga. App. 208, 213-214 (1) (b) (761 SE2d 605) (2014) (an employer may be liable for a failure to exercise due care in hiring, retaining, or supervising an employee only where "it is reasonably foreseeable that the employee could cause the type of harm sustained by the plaintiff") (citation and punctuation omitted); *Gafford v. Duncan*, 210 Ga. App. 350, 351 (436 SE2d 78) (1993) (physical precedent only) ("an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury,"

11

thereby defeating a claim for negligent entrustment).[8] The Magic City Defendants therefore are entitled to summary judgment on these claims, as well.

(c) The trial court also did not expressly address Favors's claim that Alford's, Devin Thompson's, and LA Security's "negligent undertaking to provide security within the parking lot on the night in question" may subject the Magic City Defendants to liability. Pretermitting whether the trial court's grant of summary judgment on Favors's premises liability claim necessarily disposed of any potential claim for negligent undertaking, any such claim also fails.

As is the case with the other negligence-based claims addressed above, our rulings on foreseeability and proximate cause also defeat Favors's attempts to hold the Magic City Defendants liable via a theory of negligent undertaking, which again is premised solely on the injuries Favors suffered as a result of the shooting by Officer Thompson. See, e.g., *Brown*, 265 Ga. App. at 898 (2) (a) (ii) (one who

---

[8] Of course, these claims also fail insofar as they are directed at the alleged hiring, training, supervision, or retention of Officer Thompson for the additional reason that he was not an employee of — and thus had not been hired, trained, supervised, or retained by — Alford, LA Security, or the Magic City Defendants. See generally *Allen*, 328 Ga. App. at 212-216 (1) (addressing claim for negligent hiring, retaining, and supervising). And because each of these claims fails on proximate cause/foreseeability, we need not address whether a claim for negligent entrustment otherwise potentially could lie on the facts of this case if proximate cause were established.

provides security for a premises generally can be liable for negligent performance of the undertaking "only if the type of danger the injured person actually encountered was foreseeable"). The Magic City Defendants therefore are entitled to summary judgment on Favors's negligent undertaking claim.

2. In what appears to be an alternate theory of liability, Favors argued below, as he does on appeal, that the Magic City Defendants may be vicariously liable for Officer Thompson's actions on the ground that the officer was acting in a "dual capacity" as an agent of both the public and the Magic City Defendants at the time of the shooting. The trial court found that disputed issues of fact preclude summary judgment on this issue, and the Magic City Defendants challenge that ruling on appeal. Pretermitting whether our rulings in Division 1 dispose of any claims brought under this theory of liability, it does not apply here.

The Supreme Court of Georgia has delineated the circumstances under which a private entity may be liable for the actions of a law enforcement officer acting in a "dual capacity" as follows:

> [A law enforcement officer] may occupy a dual position of exercising functions for the public and the company; in which case, where he is in the discharge of duties for the company, and the tort is committed under such circumstances as not to justify it, the company is liable. But if he

13

commits a tort merely as a police officer, the company would not be liable, unless it was done at the direction of the company. The mere fact that a . . . company pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable.

*Pounds v. Central of Ga. R. Co.*, 142 Ga. 415, 418 (83 SE 96) (1914); accord *Ambling Mgmt. Co. v. Miller*, 295 Ga. 758, 762 (2) (764 SE2d 127) (2014). Under this rubric, a private entity's liability for a law enforcement officer's tort is determined by the officer's capacity at the moment the tort arose. *Ambling Mgmt. Co.*, 295 Ga. at 763-765 (2).

Here, the tort arose when Officer Thompson, while on duty as a uniformed police officer, discharged his service weapon into the SUV in which Favors was a passenger. It is undisputed that, at no point during the evening of the shooting, was Officer Thompson employed or paid by the Magic City Defendants. Cf. *Ambling Mgmt. Co.*, 295 Ga. at 758-759, 759-760 (1), 765 (3) (finding a jury question as to dual capacity where an off-duty police officer was hired and paid by owners of the defendant apartment complex). Moreover, Favors has pointed to no record evidence that would support a finding that the Magic City Defendants had any authority to direct Officer Thompson's actions or control the manner in which he performed his

14

job as an on-duty police officer. See *Kent v. Southern R. Co.*, 52 Ga. App. 731, 731-736 (184 SE 638) (1936) (a railway conductor's act of ordering the chief of police to shoot a man blocking a train track did not render the railway liable for the police chief's subsequent act of shooting the man because the railway had no authority to direct the actions of the police chief, who "was under an independent duty of his own, by virtue of his office, to take action in the premises"); compare *Massachusetts Cotton Mills*, 164 Ga. at 597-598 (1) (the defendant manufacturing company was not liable for acts committed during an arrest effected by a law enforcement officer employed to provide security for the company, because, when making the arrest, the officer was acting under the authority of an arrest warrant and not under the company's authority), and *Touchton v. Bramble*, 284 Ga. App. 164, 165-166 (1) (a) (643 SE2d 541) (2007) (an amusement park could not be liable for an arrest effected by a law enforcement officer paid by the park, because the park had no control over law enforcement decisions made by officers who worked at the park); with *Exposition Cotton Mills v. Sanders*, 143 Ga. 593, 595-596 (85 SE 747) (1915) (a company could be liable for torts committed by a "special officer of the law" employed by the company and authorized by the company to make arrests on its property). And Favors likewise has pointed to nothing in the record suggesting that anyone associated with

15

the Magic City Defendants asked, directed, or encouraged Officer Thompson to shoot the SUV.[9] Officer Thompson, on the other hand, testified that no one associated with the Magic City Defendants asked him to fire his weapon or use violent force that evening.

Under these circumstances, at the moment that Officer Thompson shot at the SUV, he was acting solely as a police officer and not as an agent of the Magic City Defendants. See *Massachusetts Cotton Mills*, 164 Ga. at 597-598 (1); *Pounds*, 142 Ga. at 418; *Touchton*, 284 Ga. App. at 165-166 (1) (a); *Kent*, 52 Ga. App. at 731-736; compare *Hyatt Corp. v. Cook*, 242 Ga. App. 542, 542-545 (529 SE2d 633) (2000) (concluding that a hotel chain could not be liable for the actions of an off-duty police

[9] Both before the trial court and on appeal, Favors repeatedly has made numerous conclusory assertions to the effect that "Officer Thompson's actions were directed, condoned, and encouraged by [the Magic City] Defendants"; Officer Thompson "shot into the white SUV at the direction and encouragement of Magic City's security staff" (capitalization omitted); the Magic City Defendants "directed, participated, instigated and procured [Officer] Thompson's unlawful seizure" of Favors; at the time of the shooting, Officer Thompson "was merely acting on the words or direction of the [Magic City] Defendants"; the Magic City Defendants' security personnel "directed Officer Thompson to apprehend the suspected thief"; and Alford "gave Officer Thompson direction and prompted his actions." He does not, however, identify any record evidence indicating that the decision to shoot the SUV originated from anyone other than Officer Thompson. Notwithstanding Favors's broad claims to the contrary, no reasonable fact-finder could interpret any of the actions taken by Alford or Devin Thompson as an instruction to Officer Thompson to shoot the SUV, as we implicitly concluded in Division 1 (a), above.

officer, who the chain had hired for security, when the officer arrested an unruly hotel bar patron after hotel staff asked the officer for assistance when several patrons ignored an announcement that the bar was closing); with *American Multi-Cinema v. Walker*, 270 Ga. App. 314, 314-316 (1) & (1) (a) (605 SE2d 850) (2004) (concluding that the evidence would authorize a jury to find that an off-duty deputy sheriff working as a security guard for a movie theater chain confronted the plaintiff to enforce the chain's loitering policy, rather than to perform a police duty). The Magic City Defendants therefore are entitled to summary judgment under this theory of liability, as well.

3. In its order denying summary judgment, the trial court declined to address whether, at the time of the shooting, Officer Thompson "was an agent of [the] Defendants in a more traditional sense." The Magic City Defendants contend that there is no evidence from which a jury could find that Officer Thompson was their agent. We agree.

The parties have not cited (either before the trial court or on appeal), and research has not revealed, any binding precedent under which an on-duty, uniformed law enforcement officer may be deemed an agent of a private party or entity outside of the "dual agency" rubric discussed above in Division 2. Consequently, to the

17

extent that Favors's complaint may be read to assert a claim against the Magic City Defendants for the actions of Officer Thompson under "traditional" agency principles, the Magic City Defendants likewise are entitled to summary judgment.

4. In their motion for summary judgment, the Magic City Defendants argued that statements made by Magic City and/or LA Security personnel for the purpose of reporting a crime to Officer Thompson are subject to a qualified or conditional privilege that shields them from liability in this case. See generally OCGA § 51-5-7 (1)-(2); *Examination Mgmt. Svcs. v. Steed*, 340 Ga. App. 51, 53-55 (1) (794 SE2d 678) (2016) (a conditional privilege defense to tort liability may be available to one who "acted in good faith, had an interest to uphold . . . , gave a statement properly limited in its scope and upon a proper occasion, and [made publication] to proper persons"). The trial court concluded that a disputed factual issue remains as to whether the statements made by Magic City security personnel to Officer Thompson were properly limited in scope or instead "exceeded the mere reporting of a crime and escalated into the security personnel directing Officer Thompson how to apprehend the alleged thief." The Magic City Defendants challenge this ruling on appeal.

Our ruling in Division 1 renders this issue moot. Because Officer Thompson's decision to shoot into a moving vehicle was not a foreseeable result of either

reporting a robbery inside Magic City or identifying the vehicle in which the suspect in the theft was believed to be traveling, it matters not whether statements to that effect made by Magic City security personnel are subject to a qualified or conditional privilege, pretermitting whether that doctrine otherwise might apply here.

5. The Magic City Defendants also challenge the denial of summary judgment on Favors's claim for punitive damages under OCGA § 51-12-5.1. Because, as stated above, the Magic City Defendants are entitled to summary judgment on each of the primary claims against them, Favors plainly is not entitled to punitive damages, and the Magic City Defendants are entitled to summary judgment on this claim, as well. See *Ratliff v. McDonald*, 326 Ga. App. 306, 314 (2) (b) (756 SE2d 569) (2014) ("A claim for punitive damages is derivative in nature and will not lie in the absence of a finding of compensatory damages on an underlying claim.") (citation and punctuation omitted).

6. Although not addressed by either party on appeal, our rulings above also necessarily entitle the Magic City Defendants to summary judgment on Favors's claim for attorney fees under OCGA § 13-6-11. See *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (2) (475 SE2d 601) (1996) ("A prerequisite to any award

19

of attorney fees under OCGA § 13-6-11 is the award of damages or other relief on the underlying claim[s].").

*Judgment reversed. Doyle, P. J., and Reese, J., concur.*